(R.D. 11682)

ANDY MOHAN, INC. v. UNITED STATES

Entry No. 6061.

(Decided October 22, 1969)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Morris Braverman* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

LANDIS, Judge: The focus of this dispute is the amount of constructed value, 19 U.S.C., section 1401a(d), proper for eight suits, four pair of slacks, and one shirt exported from Tokyo, Japan, on January 19, 1965, via Japan Airlines, arriving on the same day at Honolulu, Hawaii. The official papers are in evidence.

Customs entry at Honolulu was based on an invoice from Andy Mohan, Ladies' & Gents' Tailor, Kowloon, Hong Kong, to Andy

Mohan, Inc., Honolulu, Hawaii, dated January 16, 1965. That invoice, *inter alia*, identifies the individual items by order number, material, description, and states the value of each item in United States dollars.

Plaintiff appeals for reappraisement of the several items appraised by customs on constructed value basis, *supra*, at invoice unit values, less 10.7 percent, plus 25 percent, packed. It is stipulated that constructed value is the proper basis for appraisement. Plaintiff's only complaint is with the values, not the basis of valuation, found by the appraiser. It claims that the constructed values should be less than the amounts at which the items were appraised. Constructed value, the alternative specified by statute when there is no statutory export or United States value, is defined as follows:

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and covering of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

Relevant to the above definition, the parties have also stipulated that "the ordinary addition for overhead and profit is a sum equal to 25 percent of the costs proved to be material and labor." (R.4.) Plaintiff is thus brought to prove first: what it would cost to buy the materials, fabricate, and otherwise process the imported suits, slacks, and shirt at the latest time preceding the date of exportation on January 19, 1965, as would permit those items to be produced in the ordinary course of business, *Charles Stockheimer, Inter-Maritime Forwarding Co., Inc.* v. *United States*, 44 CCPA 92, C.A.D. 642 (1957), and, second: the costs incident to packing the suits, slacks, and shirt for shipment

to Honolulu. I find that the proofs adduced by plaintiff on those two points are too vague and indefinite to overcome the presumption of correctness which, as a matter of law, insulates the appraised values. 28 U.S.C., section 2633.

Andy Mohan, president of the Honolulu firm, and owner of Andy Mohan, Hong Hong, testified on trial. He described the operation of his Honolulu and Hong Kong business, which he set up and supervises. An Andy Mohan numbered order form (the order number becomes the reference number on the return Hong Kong invoice) is used to take customers' orders in Honolulu. On the order form are noted the customer's name, his measurements, the type of material to be used in making up the order and the delivery date. The order form is then sent to the Hong Kong office which notifies the tailor to come to the office in order to note the order and pick up the material from stock. The tailor comes to the Hong Kong office, copies down the measurements from the order, and a notation is made on the order form of the number of yards of material taken by the tailor for the particular order. A swatch of the material is attached to the order form which is kept in the files of the Hong Kong office.

On trial, I reserved ruling on defendant's objections to the admission in evidence of the original Andy Mohan orders for the suits, slacks, and shirt here involved (exhibits 1 through 9 for identification); a shirtmaker's invoice for services (exhibit 10 for identification), and a number of sales invoices for fabric materials purchased by Andy Mohan (exhibits 11 through 16 for identification). Upon consideration of the argument made in the briefs filed by both sides, for and against their admission, defendant's objections are overruled and exhibits 1 through 16 are ordered received in evidence. I am of opinion that Andy Mohan's original orders for the suits, slacks, and shirt, tied as they are to the customs entry invoice by reference to the order number, are admissible as business records made in the regular course of business. 28 U.S.C., section 1732. The invoice for services and the sales invoices for materials are properly admissible on the question of what it cost to buy the materials and make these suits, slacks, and shirt. The exhibits weigh but little on this record in view of what I ascribe to be Mr. Mohan's vague and indefinite testimony, best illustrated by what he said it cost him to fabricate and pack the imported items of clothing.

Asked what he paid in Hong Kong dollars for packing the imported items, Mr. Mohan stated that he paid one Hong Kong dollar for the box and that with "the thread, and everything, about, roughly, it cost me [Mr. Mohan] about a dollar-forty, dollar-fifty, something like that." (R. 12.) That is all the record says about packing and for me it

is much too uncertain and indefinite to rely on. When questioned about what he paid the tailor to make the suits and slacks, Mr. Mohan stated that he had the bills with which he paid the tailor. Plaintiff's counsel elected not to offer the bills in evidence at that time, and elicited from Mr. Mohan testimony that he paid the tailor eighty Hong Kong dollars for fabricating the imported suits. (R.16.) The paid bills would, of course, have been the best evidence of what Mr. Mohan paid. Counsel never did move the bills in evidence and this, read with Mr. Mohan's rather loose testimony about what Mr. Mohan paid the tailor for the slacks, moves me to give the testimony little weight. Mr. Mohan testified that slacks had "a few prices. Some are 20 dollars, Hong Kong, some are cheaper. Wool is higher a little bit than cotton, and there was dacron." (R.17.) Three of the imported slacks are invoiced as made of dacron-wool material. One slack is invoiced as made of dacron-cotton. The following, transcribed of record, is what I am asked to rely on in constructing a value for the slacks:

Q. Would you look at the invoice, and would you tell me whether or not the slacks noted thereon were slacks of dacron, or slacks of wool, or slacks of cotton?—A. Only the last slacks is dacron-cotton.

Q. So that for all but the last slack, what did you pay the tailor in Hong Kong dollars?—A. Hong Kong dollars?

Q. Yes.—A. Fourteen Hong Kong dollars.

Q. Pardon?—A. Fourteen Hong Kong dollars, and eighteen Hong Kong dollars.

Q. I thought you said you paid twenty Hong Kong dollars, too?—A. If it's a dac's style. All wool slacks, I pay twenty Hong Kong dollars. [R.17.]

It is unnecessary to cite all the pages in the record where the testimony is of the same general tenor. I do not propose to find constructed values on what it "roughly" cost Mr. Mohan to pack the items or on cost figures for fabrication from which I can only surmise which figure is correct. *Brooks Paper Company* v. *United States,* 40 CCPA 38, C.A.D. 495 (1952). Were I to do that, I would have to do what the court of appeals warned against, "supplying from imagination" facts without a substantial basis in fact. *United States* v. *Malhame & Co.,* 19 CCPA 164, T.D. 45276 (1931).

Accordingly, I find that there is no substantial evidence on which I can rely to support the constructed values proposed by plaintiff in reappraisement of these imported suits, slacks, and shirt. The values found by the appraiser being presumptively correct, I conclude that the constructed values returned by the appraiser are the correct values.

Judgment will be entered accordingly.